**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**

**PRISM MARKETING COMPANY, INC.**                                            **PLAINTIFF**

**V.**                                                    **CAUSE NO.: 2:08CV163-SA-SAA**

**CASINO FACTORY SHOPPES, LLC, ET AL.**                             **DEFENDANTS**

<u>**MEMORANDUM OPINION**</u>

Comes now before this Court, Defendant, Casino Factory Shoppes, LLC's Motion to Dismiss, or in the Alternative, for Summary Judgment [24]. After reviewing the motions, responses, rules, and authorities, the Court makes the following findings:

*Factual and Procedural Background*

The Plaintiff filed this action against Casino Factory Shoppes, LLC ("CFS") and Stoltz alleging that those entities fraudulently concealed ongoing negotiations between Stoltz and CFS and conspired against Prism to deprive it of real estate sales commissions. Plaintiff argues that because of these actions, Prism has been deprived of a substantial commission. Moreover, Prism contends that CFS breached its contract with Prism by failing to pay the real estate sales commission owed for bringing a buyer of the Casino Factory Shoppes to the Defendant CFS. Plaintiff also states claims for promissory estoppel, unjust enrichment, and quantum meruit against CFS for failing to compensate the Plaintiff in the form of a real estate commission for registering the qualified buyer with CFS who eventually bought the Shoppes.

CFS filed this Motion to Dismiss, which is joined by Stoltz, asserting that Plaintiff was not a licensed Mississippi real estate broker when it performed the acts for which Prism intended and expected compensation in the form of a real estate sales commission; therefore, CFS requests a dismissal of all claims arising from the alleged sales contract and/or commission allegedly owed.

*Motion to Dismiss Standard*

In considering a motion under Rule 12(b)(6), the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In Re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007). To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); accord Ashcroft v. Iqbal, — U.S. —, 129 S. Ct. 1937, 173 L. Ed. 2d 868, 883-85 (May 18, 2009). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 127 S. Ct. 1955 (quotation marks, citations, and footnote omitted).

Federal Rule of Civil Procedure 12(d) provides that if on a motion under Rule 12(b)(6), matters outside the pleadings are considered by the court, "the motion must be treated as one for summary judgment under Rule 56."

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by 'showing'...that there is an absence of evidence to support the nonmoving party's case"). The burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citing FED. R. CIV. P. 56(c), (e)). That burden is not discharged by "mere allegations or denials." FED. R. CIV. P. 56(e). All legitimate factual inferences must be made in favor of the nonmovant. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

*Discussion and Analysis*

Mississippi Code Sections 73-35-1, *et seq.*, govern the licensing and practice of real estate brokers. Section 73-35-3 defines a "real estate broker" as

> all persons, partnerships, associations and corporations, foreign and domestic, who for a fee, commission or other valuable consideration, or who with the intention or expectation of receiving or collecting the same, list, sell, purchase, exchange, rent, lease, manage or auction any real estate . . . or who negotiate or attempt to negotiate any such activity; or who advertise or hold themselves out as engaged in such activities; or who direct or assist in the procuring of a purchaser or prospect calculated or intended to result in a real estate transaction.

The Act also makes it unlawful for any person, partnership, association or corporation to "engage in or carry on, directly or indirectly, or to advertise or to hold himself, itself or themselves out as engaging in or carrying on the business, or act in the capacity of, a real estate broker . . . within this state, without first obtaining a license as a real estate broker . . . ." Miss. Code Ann. § 73-35-1. The Act further prohibits such person, partnership, association or corporation from

> maintain[ing] an action in any court of this state for the recovery of a commission, fee or compensation for any act done or services rendered, the doing or rendering of which is prohibited under the provisions of this chapter for persons other than licensed real estate brokers, unless such person was duly licensed hereunder as a real estate broker *at the time of the doing of such act or the rendering of such service.*

Miss. Code Ann. § 73-35-33 (emphasis added).

In 1960, the Mississippi Supreme Court addressed whether a person engaged in brokerage activities, but without a Mississippi license, was entitled to recover a real estate commission. Ladner v. Harsh, 120 So. 2d 562 (Miss. 1960). Harsh, a real estate broker licensed in Louisiana, but not Mississippi, claimed a real estate commission on a sale of land in Stone County. Id. at 563. Harsh

3

contended the actions of the sale were in Louisiana, not Mississippi. However, the Mississippi Supreme Court noted that "[i]t is clear that Harsh was the moving spirit in the negotiation of this sale. The question for determination is, where did he arrange to make the sale of this property?" Id. at 565. "If it occurred in Mississippi, he was not entitled to a commission . . . because he was not licensed in this state." Id.

The Mississippi Supreme Court held that the essential acts for the consummation of the sale were performed in Mississippi. However, the Court held, "it was only necessary for the plaintiffs to show that Harsh, in this state, negotiated or attempted to negotiate such sale, or directed or assisted in procuring a purchaser or prospect calculated or intended to result in such real estate transaction." Id. Moreover, the Court held because Harsh was not licensed in the state, his acts were unlawful; therefore, he had no right to collect a commission. Id.

A district court, interpreting Ladner, noted that the "appropriate inquiry in determining whether nonresident brokers or salespersons . . . violated real estate laws pivots on whether the nonresident broker or salesperson was physically present within the state when negotiating or attempting to negotiate a sale or directing or assisting a purchaser or prospect calculated or intended to result in a real estate transaction." Saucier v. Coldwell Banker JME Realty, 2007 WL 2898525, *3 n. 2 (S.D. Miss. Sept. 27, 2007).

CFS contends that Prism was not licensed in Mississippi as a real estate broker when it performed acts for which Prism intended and expected compensation in the form of a real estate sales commission. Prism counters that the statute only proscribes conduct that occurs when the non-resident broker is physically present within the state. Moreover, Prism asserts that it has presented a genuine issue of material fact as to whether its conduct on January 10, 2006, constituted brokerage

4

activities.

The parties have narrowed this Court's focus to one particular event: a meeting between representatives from Prism and CFS in Tunica, Mississippi, on January 10, 2006. In its Complaint, Prism admits that in January of 2006, Janet Grady and Bruno Andreades, the two Prism shareholders, met with a CFS representative, Lane Whitehead, in Tunica, Mississippi. At this meeting, Prism confirmed that Andreades would get his Mississippi real estate broker's license "expressly so that Prism could 'register' a qualified buyer and earn the promised commission." Moreover, in Janet Grady's sworn affidavit attached to Prism's response to the pending motion for summary judgment, Grady testified that "in January of 2006 at the Shoppes in Tunica, Mississippi, I introduced Bruno [Andreades] to Whitehead and we discussed Prism's potential involvement as a broker in the sale of the Shoppes." Grady further noted that she "informed Whitehead that [she] intended to involve Bruno in any potential sale of the Shoppes with which Prism might become involved because he had a North Carolina Real Estate [license] and would obtain his Mississippi license." Grady further testified: "It was at this meeting [in Tunica, Mississippi,] that Whitehead promised CFS would pay a commission to Prism if we found and registered a qualified buyer that bought the Shoppes."

Bruno Andreades also attached his sworn affidavit noting that in January of 2006 at the Shoppes in Tunica, Mississippi, Janet Grady, Whitehead and he "discussed Prism's potential involvement as a broker in the sale of the Shoppes." He further testified that he told Whitehead he would "obtain a Mississippi real estate license for the sole purpose of Prism being involved in a potential sale of the Shoppes." Moreover, he noted that it was "at this meeting that Whitehead promised that CFS would pay a commission to Prism, if [Prism] found and registered a qualified buyer that bought the Shoppes." Thus, Prism, through its representatives, has admitted that in

5

January of 2006, in Tunica, Mississippi, it was negotiating its potential commission for the sale of the Casino Factory Shoppes and discussing with CFS the terms of such brokerage agreement.

As noted above, the Mississippi Code prohibits one from recovering a commission where brokerage activities are consummated within the state and the person acting as real estate broker is not licensed in Mississippi. Thus, Prism, with the intention of receiving or collecting a commission, attempted to negotiate the listing of the Casino Factory Shoppes in contravention of Mississippi Code Section 73-35-33.

However, this case presents a dilemma distinguishable from Ladner v. Harsh. Harsh was never licensed as a Mississippi real estate broker during the consummation of the real estate deal. Here, Bruno Andreades acquired his Mississippi real estate brokers license on July 12, 2006. Prism contends that after Andreades received his Mississippi license, Prism undertook the additional acts in furtherance of the real estate deal between CFS and Stoltz. Namely, Prism received and forwarded Stoltz's Letter of Confidentiality from Stoltz to CFS. Moreover, Prism sent due diligence materials and a marketing package to Stoltz's office. Bruno Andreades continued to solicit and market CFS to Stoltz at various venues. Further, Prism organized and attempted to initiate a conference call among the parties to discuss the real estate deal. Thus, Prism engaged in real estate brokerage activities after receiving its Mississippi license. Accordingly, Prism has presented a genuine issue of material fact as to whether Prism is entitled to a commission for its actions taken on behalf of either Stoltz or CFS on and after July 12, 2006.

*Conclusion*

Mississippi law prohibits the recovery of a commission based on actions taken as an unlicensed real estate broker within the state. Accordingly, Prism is unable to recover a commission

for acts taken prior to its attaining the Mississippi real estate brokerage license. However, Prism has presented a genuine issue of material fact as to whether, and to what extent, a commission is owed to Prism for actions in furtherance of the real estate deal at issue by Stoltz and CFS. Thus, Casino Factory Shoppes Motion to Dismiss [24] is GRANTED IN PART and DENIED IN PART.

SO ORDERED, this the 29th day of September, 2009.

/s/ Sharion Aycock
**U.S. DISTRICT JUDGE**