**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**

**PRISM MARKETING COMPANY, INC.**                                          **PLAINTIFF**

**V.**                                                                       **CAUSE NO.: 2:08CV163-SA-SAA**

**CASINO FACTORY SHOPPES, LLC, ET AL.**                                 **DEFENDANTS**

**MEMORANDUM OPINION**

Comes now before this Court, Defendant, Stoltz Management Company's ("Stoltz") Motion for Summary Judgment [58], and Casino Factory Shoppes, LLC's ("CFS") Second and Third Motions for Summary Judgment [56] [102].[1] After reviewing the motions, responses, rules, and authorities, the Court makes the following findings:

*Factual and Procedural Background*

The Plaintiff, Prism Marketing Company ("Prism"), is comprised of two principals: Janet Grady and Bruno Andreades. From 2000 until 2007, Prism represented CFS as an independent marketing agent for a factory retail outlet center known as Casino Factory Shoppes. In its capacity as the Shoppes' marketing agent, Prism convinced retailers throughout the United States to rent tenant space in the Casino Factory Shoppes. CFS then paid Prism fees and commissions for that work.

In 2006, Prism expanded its business to provide real estate brokerage services. Prism learned that CFS was interested in selling the Casino Factory Shoppes, so it sought out potential buyers for the property. Specifically, Prism approached Stoltz Management Company as a potential buyer in

---

[1] Also before the Court is Prism's Motion to Amend/Correct its Response to CFS's Third Motion for Summary Judgment [123]. That motion is granted, but not to the extent requested. The Court reviewed Plaintiff's amended Response only for citations not previously provided and typographical error corrections.

May of 2006. Stoltz expressed its interest in purchasing the Shoppes and requested additional marketing and financial information. Prism registered Stoltz as a potential buyer with CFS. In its follow up letter, Prism outlined Stoltz's interest in the Shoppes and requested clarification as to the commission Prism would receive if its registered buyer bought the Shoppes. Prism also suggested that they represent CFS, as seller, in the transaction. CFS, through its general counsel, Lane Whitehead, sent the following letter to Prism:

> The PRISM Company is welcome to represent Stoltz Management exclusively as Buyer's broker. Casino Factory Shoppes, LLC is not interested in offering The PRISM Company an exclusive listing agreement as seller's agent or in having The PRISM Company as a dual agent or as seller's agent in this particular transaction. Casino Factory Shoppes would recognize a protection period for The PRISM Company's representation of Stoltz Management as a buyer for a period of six months from the date of delivery of a fully executed confidentiality agreement. Casino Factory Shoppes, LLC would offer a Three Hundred Thousand Dollar ($300,000.00) flat commission to buyer's broker.

Thereafter, Prism responded and asked for a twelve month protection period. When no response was received from CFS, on August 2, 2006, Prism forwarded a Confidentiality Agreement to Stoltz for execution. Mark Curcio, Stoltz's Senior Vice-President, signed the agreement and faxed it to Prism, who then forwarded that document on to CFS on August 9, 2006. CFS authorized Prism to release the Casino Factory Shoppes' due diligence material, including rent rolls and tenant sales information, to Stoltz.

Once the due diligence materials were delivered, Prism began dialoguing with Stoltz concerning Prism's compensation for a commission or finder's fee upon closing the Casino Factory Shoppes deal. Several emails between the parties were exchanged regarding Prism's potential compensation. On October 26, 2006, Bruno Andreades requested a conference call with Stoltz's representative to further negotiate the terms of Prism's right to represent the buyer. Stoltz responded

2

that it was no longer interested in pursuing the purchase of the Casino Factory Shoppes.

On October 27, 2006, Prism sent an email to CFS explaining that Stoltz had expressed its "intention not to pursue further compensation negotiations with The PRISM Co., in conjunction with the acquisition of CFS." Further, Prism noted that "[s]hould Stoltz contact you directly, kindly refer them back to us while our referral agreement is in force (until 02.09.07)." Prism requested Stoltz return all due diligence materials. Stoltz contends it returned all due diligence materials. Prism argues that the rent rolls and tenant sales information were never returned.

Stoltz maintains that it never had any direct contact with CFS prior to May of 2007. In fact, Stoltz avers that it was unaware of the identity of the owners of Casino Factory Shoppes. Mark Curcio, a Stoltz Vice-President, testified that he reconsidered his decision to not pursue the Casino Factory Shoppes in April of 2007. As a result, Stoltz contacted Jeff Koval, an attorney that previously commented to a Stoltz employee, Bill Reddinger, that he knew the owners of Casino Factory Shoppes. Koval contacted Whitehead on May 1, 2007, and determined that the Casino Factory Shoppes had not been sold. Whitehead advised that CFS was interested in selling the property and would like to speak to Stoltz directly. Stoltz thereafter contacted CFS directly on May 7, 2007. The sale of the Casino Factory Shoppes from CFS to Stoltz was completed in August of 2007.

The Plaintiff filed this Complaint on July 9, 2008, alleging breach of contract, reasonable reliance, unjust enrichment, quantum meruit, misrepresentation, fraudulent concealment and conspiracy to defraud against CFS. Plaintiff also brought claims of misrepresentation, fraudulent concealment, conspiracy to defraud, and tortious interference against Stoltz. Stolz and CFS have filed motions for summary judgment arguing that they are both entitled to judgment as a matter of

law.

The Court has already addressed several motions by the parties. Of note here, Andreades did not obtain his Mississippi real estate license until July 12, 2006. This Court has previously addressed the actions taken by Prism prior to Andreades' licensure. In particular, the Court held that any actions taken by Prism prior to being licensed in Mississippi are non-compensable as real estate brokerage activities because Prism came into the state and performed at least one act of brokerage activity. Thus, any commission that Prism asserts it is owed must have accrued after July 12, 2006.

*Summary Judgment Standard*

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by 'showing'...that there is an absence of evidence to support the nonmoving party's case"). The burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citing FED. R. CIV. P. 56(c), (e)). That burden is not discharged by "mere allegations or denials." FED. R. CIV. P. 56(e). All legitimate factual inferences must be made in favor of the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. 2548. Before finding that no genuine issue for trial exists, the court must first be satisfied that no

4

reasonable trier of fact could find for the nonmovant. <u>Matsushita Elec. Indus. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

*Discussion and Analysis*

*Breach of Contract*

In the Complaint and Response to CFS's Second Motion for Summary Judgment, Plaintiff argues that a contract existed between Prism and CFS based on a meeting in January 2006. However, as noted above, any negotiation which took place prior to Prism acquiring a Mississippi real estate brokerage license is inadmissible. Plaintiff's Response to CFS's Third Motion for Summary Judgment, filed after this Court's ruling on the Mississippi Real Estate Broker License Law, contends that the existence and terms of a contract based on Lane Whitehead's July 10, 2006,[2] letter are questions for a jury.

Under Mississippi law, the elements of a valid contract are: (1) two or more contracting parties; (2) consideration; (3) an agreement that is sufficiently definite; (4) parties with the legal capacity to make a contract; (5) mutual assent; and (6) no legal prohibition precluding contract formation. <u>Mauldin Co. v. Lee Tractor Co. of Miss., Inc.</u>, 920 So. 2d 513, 514 (Miss. Ct. App. 2006); <u>Rotenberry v. Hooker</u>, 864 So. 2d 266, 270 (Miss. 2003). Pertinent here, the mutual assent of each of the contracting parties to the terms of the contract is essential to the formation of a valid contract. <u>Lanier v. State</u>, 635 So. 2d 813, 826 (Miss. 1994), and the court "will not draft a contract between two parties where they have not manifested a mutual assent to be bound." <u>A. Copeland Enters. v. Pickett & Meador, Inc.</u>, 422 So. 2d 752, 754 (Miss. 1982).

---

[2]Although Whitehead's letter is dated July 10, 2006, neither party disputes that the letter was not delivered until at least July 12, 2006.

The United States Supreme Court explained:

> As no contract is complete without the mutual assent of the parties, an offer to sell imposes no obligation until it is accepted according to its terms. So long as the offer has been neither accepted nor rejected, the negotiation remains open, and imposes no obligation upon either party; the one may decline to accept, or the other may withdraw his offer; and either rejection or withdrawal leaves the matter as if no offer had ever been made. A proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested. The other party, having once rejected the offer, cannot afterwards revive it by tendering an acceptance of it. Eliason v. Henshaw, 4 Wheat. 225; Carr v. Duval, 14 Pet. 77; National Bank v. Hall, 101 U.S. 43, 50; Hyde v. Wrench, 3 Beavan, 334; Fox v. Turner, 1 Bradwell, 153.

Minneapolis & St. Louis Ry. v. Columbus Rolling Mill, 119 U.S. 149, 151, 7 S. Ct. 168, 30 L. Ed. 376 (1886).

As noted above, Whitehead's July 10, 2006, letter stated that CFS would recognize a protection period "for a period of six months from the date of delivery of a fully executed confidentiality agreement." On July 14, 2006, Prism responded to CFS's offer and asked for an extension of the protection period to 12 months. CFS never responded to Prism's request. Thus, the correspondence distinctly shows that the minds of the parties did not meet. This correspondence did not form a contract. See Beaumont v. Prieto, 249 U.S. 554, 39 S. Ct. 383, 63 L. Ed. 770 (1919) (noting that a proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested); Bowen v. Hart, 101 F. 376, 381 (5th Cir. 1900). Accordingly, Plaintiff's breach of contract action against CFS is dismissed.

*Equitable Claims*

In the absence of an express contract, Plaintiff contends that CFS owes it a commission based on quantum meruit and unjust enrichment principles.

The essential elements of recovery under a quantum meruit claim are: "(1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and (4) under such circumstances as reasonably notified person sought to be charged that plaintiff, in performing such services, was expected to be paid by person sought to be charged." In re Estate of Fitzner, 881 So. 2d 164, 173-74 (Miss. 2003) (citing Reed v. Weathers Refrig. & Air Cond., Inc., 759 So. 2d 521, 525 (Miss. Ct. App. 2000)). The measure of recovery in quantum meruit is the reasonable value of the materials or services rendered. Kalavros v. Dep. Guar. Bank & Trust Co.,158 So. 2d 740 (1963).

Here, Prism sought out a potential buyer for CFS. Prism checked Stoltz's qualifications and "registered" or furnished their identity to CFS. In anticipation of a possible sale, CFS provided due diligence materials to Prism to forward to the potential buyer. Prism has put forth evidence of their prior dealings with CFS and Whitehead's July 10, 2006, letter to show that it reasonably expected to be paid for its services. Therefore, Plaintiff has put forth a genuine issue of material fact as to quantum meruit. Summary judgment is inappropriate as to this claim.

Prism asserts that because CFS did not pay Prism the commission it owed the broker, it is in possession of money that should, in good conscience and justice, be paid to Prism. A claim for unjust enrichment depends upon a showing of some legally cognizable wrong by which a defendant has been unjustly enriched at the expense of the plaintiff. Cole v. Chevron USA, Inc., 554 F. Supp. 2d 655, 673 (S.D. Miss. 2007) (citing Estate of Johnson v. Adkins, 513 So. 2d 922, 926 (Miss. 1987)

7

(noting that in cases of unjust enrichment the entity sought to be charged is in possession of money or property that should pass to another)).

Unjust enrichment is an equitable remedy closely associated with "implied contracts" and trusts. In Hans v. Hans, 482 So. 2d 1117 (Miss. 1986), the Court held:

> The doctrine of unjust enrichment or recovery in quasicontract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.

482 So. 2d at 1122. Moreover, "the basis for an action for 'unjust enrichment' lies in a promise, which is implied in law, that one will pay to the person entitled thereto which in equity and good conscience is his." Magnolia Federal Savings & Loan v. Randal Craft Realty, 342 So. 2d 1308, 1311 (Miss. 1977).

The general rule under Mississippi jurisprudence is that a "broker is entitled to a commission if the broker is the procuring cause of the sale." Hamilton v. Hopkins, 834 So. 2d 695, 702 (Miss. 2003) (citations omitted). Prism explains that it was the procuring cause of the sale because it brought CFS and Stoltz together by seeking out potential buyers and registering Stoltz's name with CFS. CFS counters that Prism's insistence on a higher brokerage fee from Stoltz actually damaged the chances of the Casino Factory Shoppes' sale to Stoltz. "Where, as here, the facts are in dispute, the question whether the broker is sufficiently a procuring cause of the sale is one for the trier of fact." Carmichael v. Agur Realty Co., Inc., 574 So. 2d 603, 608 (Miss. 1990). Thus, Defendant's Motion for Summary Judgment as to unjust enrichment is denied.

*Fraud, Misrepresentation, and Civil Conspiracy*

Prism insists that CFS and Stoltz intentionally delayed the sale of the Casino Factory Shoppes until after the Protection Period expired and falsely led Prism to believe that Stoltz was not interested in purchasing the Shoppes. Further, Plaintiff contends that negotiations between Stoltz and CFS continued after October of 2006, when Stoltz broke off negotiations with Prism. According to the Plaintiff, this collusion evidences a concerted plan by CFS and Stoltz to exclude Prism from the transaction.

To recover under a theory of fraudulent misrepresentation, a plaintiff must prove, by clear and convincing evidence, the following elements:(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. Holland v. Peoples Bank & Trust Co., 3 So. 3d 94, 100 (Miss. 2008) (citing Bank of Shaw v. Posey, 573 So. 2d 1355, 1362 (Miss. 1990)).

Prism asserts that in October of 2006, Stoltz falsely represented that it was no longer interested in acquiring the Casino Factory Shoppes. Stoltz contends that there is no evidence that such representation was false. However, the Casino Facotry Shoppes deal was subsequently consummated. Plaintiff has thus presented a genuine issue of material fact as to whether Stoltz's representation was false, whether Stoltz knew it was false, and what Stoltz's intent was in making that representation.

Civil conspiracy requires showing: "(1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more

9

unlawful overt acts; and (5) damages as the proximate result." Gallagher Bassett Servs., Inc. v. Jeffcoat, 887 So. 2d 777, 786 (Miss. 2004).

Prism contends that CFS and Stoltz engaged in secret negotiations between October 2006 and May 2007 in order to avoid paying Prism a commission. Plaintiff has failed to prove any direct communication between the two entities prior to May of 2007. Thus, there is no evidence that CFS and Stoltz committed a civil conspiracy in order to deprive Prism of a commission.

*Tortious Interference with a Business Relationship*

Prism also contends that Stoltz interfered with Plaintiff's business relationship with CFS causing economic loss to Prism. In particular, Prism contends that upon purchase of the Casino Factory Shoppes, Stoltz demanded that CFS terminate the contract with Prism for lease negotiations and representations of Casino Factory Shoppes.

Pursuant to Mississippi law, tortious interference with business relations requires showing: "(1) the acts were intentional and willful; (2) the acts were calculated to cause damage to the plaintiffs in their lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual loss and damage resulted." PDN, Inc. v. Loring, 843 So. 2d 685, 688 (Miss. 2003). In addition to the above elements, tortious interference with contract includes malicious interference with a valid contract. Levens v. Campbell, 733 So. 2d 753, 759-61 (Miss. 1999).

Plaintiff claims that Stoltz interfered with Prism's relationship with CFS by requiring CFS to terminate their leasing contract with Prism three months prior to the sale of the Casino Factory Shoppes. Stoltz argues that the contract was terminated upon the lawful acquisition of real estate from CFS. Thus, Stoltz contends, any loss in business was a result of CFS no longer owning a retail

10

outlet shopping center.

Prism attached to its Response an email from Lane Whitehead to Prism dated May 18, 2007, in which she explains that CFS has "entered into an agreement for the sale of Casino Factory Shoppes as of late this afternoon." The email further directs Prism to cease representation of Casino Factory Shoppes as the Agreement "includes the right for the prospective purchasers to represent Casino Factory Shoppes at the ICSC convention." Whitehead requested that Prism make "no further representation to prospective tenants . . . until further notice." Thus, there is a question as to whether this email constituted a sufficient termination of the leasing contract between Prism and CFS.

After reviewing the submissions of the parties and the record in this case, there exists genuine issues of material fact as to when CFS terminated the leasing contract with Prism, whether the contract was terminated on request of Stoltz, and if so, what Stoltz's intent was in having CFS terminate that contract.

*Conclusion*

Prism and CFS did not have a meeting of the minds sufficient to establish an express contract for real estate sales commission. Plaintiff's breach of contract claim is dismissed. There are questions of fact as to whether Prism is entitled to compensation for their efforts in the sale of Casino Factory Shoppes; thus, Plaintiff's unjust enrichment and quantum meruit claims survive CFS's Motion for Summary Judgment. Prism has also presented genuine issues of material fact as to its claims against Stoltz for misrepresentation and tortious interference with business relations. However, Plaintiff has failed to produce any evidence of a civil conspiracy between the Defendants.

Accordingly, Stoltz's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, and CFS's Second and Third Motions for Summary Judgment are GRANTED IN PART

and DENIED IN PART.

SO ORDERED, this the 30th day of November, 2009.

                                                 **/s/ Sharion Aycock**
                                                 **U.S. DISTRICT JUDGE**